Case number 24-5294. Public Employees for Environmental Responsibility and Center for Environmental Health Appellants v. Lee Zeldin as Administrator of the United States Environmental Protection Agency and Environmental Protection Agency. Mr. Sussman for the Appellants, Mr. Anderson for the Employees, and Ms. Delfort for the Improving Our Employee. Good morning, Mr. Sussman. Good morning, Your Honor, and good morning to the panel. May it please the court, I'm Robert Sussman. I'm representing the plaintiff appellants in this case, Center for Environmental Health and Public Employees for Environmental Responsibility. So, this case is about Section 4F of the Toxic Substances Control Act. Section 4F is an action forcing provision that compels EPA to address unusually urgent and threatening chemical risks that call for expeditious protection of public health. For purposes of this appeal, there is not a dispute that the high bar for triggering Section 4F has been met. The district court found based on the allegations in our complaint that EPA had a non-discretionary duty to initiate applicable action under Section 4F in 180 days. The judge also found based on the complaints that the 180-day clock began to run by March 29, 2023, and thus in October 2023, EPA was in violation of its mandatory duty. And EPA says in its brief that, again, for purposes of the appeal, it is accepting those conclusions in proceeding on the basis that the application of Section 4F was given. So, the argument that the government is making here is that even if EPA was in violation of its duties under Section 4F, it discharged those duties after this case was filed by publishing what I think we can agree is a bare bones request for information on fluorinated containers on September 24, 2024. And I think it's pretty clear that this information request did not discharge EPA's non-discretionary duty. And instead, we would say that the plain language of the statute shows that EPA was obligated to issue a proposed rule under Section 6 of TSCA by the 180-day deadline for action. Sorry, Your Honor. And I want to make sure we have the facts right here, okay? This is a strange case to me, in any event, in that, as far as I can see, the agency did exactly what it was supposed to do in this case. The agency did exactly what it was supposed to do in this case. It got a petition from those on your side requesting action of the sort being taken here. They granted the petition. They credited it and said there was serious information, long letters. I was amazed when I looked at the record, so unusual. The government agency immediately says, yes, there's a problem here. We have to address it. And that's certainly not inconsistent with what 4F says. 4F talks about initiating applicable action. It doesn't say anything more than initiate applicable action under 5, 6, or 7. Those are potential rulemaking proceedings. And what the government did here was to initially say we need to solicit information, which is normally done when you're invoking or may invoke rulemaking. That is a very normal procedure if you're invoking rulemaking. That's what the statute says. If you read this, heaven forbid, statute that goes on and on and on, what it is really saying in 4, 5, and 6, if there's something here to worry about, you can invoke rulemaking. And if you decide not to, you should tell us why not. But in any event, when you invoke rulemaking, and it invokes the APA, it says follow APA procedures, which is what they are doing. They are asking for information preceding to making a determination. You can't start in one moment the initiation of rulemaking without knowing what it is you're going to issue a rule over. You have to get information to make a determination to narrow it down, and then you have all these risk determinations that the statute requires. There's so much more to be done. Your suggestion that they had to respond to your petition by within 90 days having a rule in place, the statute doesn't say that. It absolutely does not say that. I just want you to tell you what I'm seeing. As far as I can see, they have not done anything that's inconsistent with the statute at this point. Nothing. Well, I would respectfully disagree with that. The proceeding under which UPA was proceeding was the rulemaking provisions of Section 6. The rulemaking provisions of Section 6 are more prescriptive than APA. It says initiate applicable action. Okay. It doesn't say initiate a rulemaking. And agencies don't normally initiate a rulemaking without having determined what it is that they're going to pursue. And so what they did, including all of these statutory provisions here, there are long sections on risk determinations, risk evaluation, which can go on. In fact, the statute says at one place, I think it says, take at least 60 or 90 days, maybe even more. In other words, it assumes it's going to take time to make the risk determinations of the sort that would be required in the case of this bill. Your Honor, I think we need to look at what Section 6 says. Section 61 says very specifically that the agency must propose a rule within one year after making a determination of unreasonable risk. After making a determination. What they've done now is they granted you a petition. They did make a determination of unreasonable risk. They made a determination that they had enough information to get started and to take the initiate applicable action. They had all the information that they needed to get started because getting started with a rule simply requires a determination of unreasonable risk. All they need to determine, in addition, is how to eliminate the risk. And that is not a big decision. It cannot consider economic analysis. And it is certainly a decision that could be made within 180 days. Is the deadline 180 days, but it's one year? Do you make the determination of unreasonable risk? And that's happened. And then once there's a determination of unreasonable risk, then the agency has the three different choices to do. The agency has to what? It makes a determination of unreasonable risk. Right. Oh, no, no, no. And then? There may be reasonable cause. It's not what you're saying. It's they make a determination. It may be a reasonable basis to conclude. They haven't done the risk determination yet. Well, they have. That's a whole other section of the statute. They're not even close to that yet. I mean, they made that determination in December 2023 when they issued an order accompanied by a 200 page risk evaluation, which concluded explicitly that these fluoridated containers present an unreasonable risk of injury. And the obligation I'm referring to while it ties back to section 4F is the obligation in section 6C1, which says if the agency has made a determination of unreasonable risk, there must be a proposed rule within a year. Full stop. I'm just trying to find in the addendum here, the section 6 determination language. Yeah. Are you looking in the statutory addendum? Yes, but I think I'm looking in the government statutory addendum. Yeah, I think that in the addendum, it's on page five of the addendum, your honor, under C, promulgation of section 6A. Deadlines. If the administrator determines that a chemical substance presents an unreasonable risk of injury to health or the environment in accordance with subsection B4A of section 6, which is on 4A. That's a good question. It's on 4A and it's... It's not in the addendum, but basically what it says is that EPA, to determine an unreasonable risk, EPA must do a risk evaluation, which accomplishes three simple things. First, it's got to make the determination of unreasonable risk. Second, it can't make that determination on the basis of cost and other non-risk factors. Third, it needs to examine whether there is a risk to vulnerable populations, basically. And then finally, it must examine the risk under the conditions of use at issue. And so there are a lot of bells and whistles in section 6B about what EPA must do in the course of a risk evaluation, but the provision in section 6C1, which triggers the one-year duty to propose a rule, simply refers to subsection B4A. And I think... B4A of section 6, which is just what you were describing, which says unreasonable risk, don't consider cost or other non-risk factors, and consider exposed or susceptible populations. And your view is that that had already happened in connection with the invalidated section 5 action against Enhance, that all of that information was known and being pursued up a dead end under section 5, and that now... I mean, I guess there's a question when the government has done something in compliance with its obligation either to act under section 5, section 6, or section 7, it acted under section 5, and how do we think about the deadline when the time has run, they were busy in good faith doing something that turned out not to fulfill their obligation? Or let's just say for the they do argue that it did fulfill their obligation, but now they're moving over to a different way of fulfilling their obligation with respect to a non-new use, right? And the question is, how do we know, I guess two things. One, how to treat the deadline. It's supposed to be one from this finding of unreasonable risk. Unreasonable risk. How do we know when is that restarted? I mean, that seems like that's an issue of first impression. And then the other thing is the information that EPA already has, how do we know how that maps onto the requirements for rule unreasonable risk and the risk assessment for under section 5 on, I think it was December 1, 2023. And the risk assessment, your honor, is in the joint appendix. It is a very copious, highly scientific, exhaustive, and comprehensive risk evaluation. And as I said before, it touches all the bases in subsection B4A. So I think the judgment that Congress made here is that if the agency has made a determination of unreasonable risk that touches those bases, then you don't need to go through the full section 6B risk evaluation process and comply with all the bells and whistles in section 6B. And the reason for that is EPA has already made a determination of unreasonable risk. So let's go right to rulemaking. And Congress said go right to rulemaking in one year. So I think that's where we are. And to amplify that, EPA is- Where do you think it says go right to rulemaking in one year? It's not in 4F. It's what? It's not in 4F. No, that's my point. It's in section 6C. And what about the deadlines and, excuse me, the language saying shall publish in the Federal Register a final rule not later than two years after the date on which the final risk evaluation regarding the chemical substance- Where is that provision? That's the next provision. So he's just looking at that. So the proposed rule is not later than one year after the risk evaluation, and then a final rule not later than two years after the final risk evaluation. And then goes on to say it can extend the deadlines for not more than two years. Well, they could do that, but, I mean, they haven't done that, Your Honor. They haven't extended the deadlines. And I think another point, which is very important here, is EPA is not repudiating its determination of unreasonable risk. It is standing by that determination. It is sticking with the science, and it's not saying that we need to go back to square one. Right. I mean, it's not directly saying that. Let me ask you to help us out by, so based on where EPA now stands, do you understand EPA to be obligated to fulfill or meet these deadlines in Section 6? And sort of where do you perceive EPA to be in the timeline that Section 6 sets out? Well, I would say that it's a one-year deadline from the determination of unreasonable risk, and that was made in December 2023. So a year later, in December 2024, EPA had an obligation to propose the rule. Except wasn't it in some of that time litigating? It made the determination in the guise of the new use. And so I guess, don't they get some kind of like restart for the time reasonably taken to draft the rule? Maybe. I think that that's an issue for the district court in setting a deadline to comply with the statutory duty. And courts, when they do that, they don't hold the agency literally to the deadline in the statute. But they do inquire into the circumstances, and often they give the agency more time to comply than the statutory deadline allows. But that doesn't... But I'm really asking you a question about how does the statutory deadline? It's not clear to me one way or the other whether they've missed the statutory deadline, whether they still have some time to meet it. Because if they've done this whole frustratingly unsuccessful effort under the new use provisions, now they're kind of back at square one, but obviously they're not at square one for the expertise and information gathering reasons that you say. So there's something to be done there about getting into the traces for Section 6 operation. Well, I guess I would say the one-year deadline in Section 6 is explicit, and it's mandatory, it's non-discretionary. But, I mean, I... One-year deadline to what? Propose a rule? To propose a rule. After risk assessment? Excuse me? After risk assessment? No, no deadline for risk assessment because that's been done. No, after. That's what he's saying. After the determination of unreasonable risk. Yes. And so one way to look at it is enhance was handed down by the Fifth Amendment in March 2024. So you could say, well, from that time, if EPA's back to square one, I mean, you're right to say, let the district court figure this out, but obviously we're going to ask the government about this. But would it be reasonable in your view to say that they should do it as soon as possible, but that under the terms of the statute, the most they should get is a year from March 2024 to turn around and promulgate a rule? Yeah. Or as soon as practicable. I think that's a reasonable approach because up until the Fifth Circuit decision, the agency had a reasonable basis to feel that it was complying with Section 4F because it had issued an order and the order banned the fluorination of containers producing PFAS. And so the agency had every reason to believe that it could implement a ban based on Section 5 and not on Section 6. But that, of course, changed with the Fifth Circuit decision in March of 2024. So I think it's reasonable to say, okay, at that point, the game changed because Section 5 was out of the picture. Section 5 was no longer a basis for regulating fluorinated containers based on the Fifth Circuit decision, but the agency still had an outstanding duty. And I would say an outstanding duty under both Section 4F and Section 6C1. And so I would say at that point, the clock restarted. All right. I have a question for you about standing. I don't think we have a case where an employee is determined to be effectively in the position of a member for purposes of associational or representational standing. And I mean, if you had filed the case on behalf of these organizations and also these individuals in their individual capacity, that seems like that would be easier for purposes of standing. Well, there are actually a couple of decisions which involve associational standing where the court looked to harm to the employee, the staff of the organization as a basis for standing. One of those decisions, I believe, was in the district court in this district. And let me see. It's Air Alliance Houston, the Chemical Safety Hazard Investigation Board. It's a 2019 case of the district court. And then there's another decision from the district court in Washington. It's called Institute of Cetacean Research, the Sea Shepherd Conservation Society. And the court said there that employees and volunteers may count as members for purposes of associational standing. And then in the Smith case in the Ninth Circuit, a 2004 case, a standing was based on an individual who was actually working on a program that the organization was carrying out. So I don't know that he was an employee, but he was he was a contractor. And it was the potential injury to him that provided a basis for standing. And, Your Honor, the government is actually not disputing in this case that the CEH and PEER employees who have provided declarations qualify for demonstrating associational standing. They The fact that they may agree with you does not get this court off the hook in deciding whether they're standing. It's something because it goes to our jurisdiction. It's something that the parties cannot stipulate to or waive. And so we still have to decide whether we're satisfied, notwithstanding whether EPA and Enhance are fighting it, whether we think this is a I mean, it feels to me like a potential broadening. I see the analogy where if these folks are are and they say they are very aligned with the mission of the organization, they the organization represents their views. They have input into the organization's positions. And however you look at associational or representational standing looks at those factors. So I see that in your favor, but it it feels novel to me. And it's novel, but there's some case law out there. This is which isn't binding on us. This is not not an issue of first impression, but I want to make one more point about about standing, which is the Supreme Court in the two additional cases made it very clear that when a case is at the pleading stage, which this case is is is at the the judicial responsibility is simply to look at whether the general allegations in in the complaint seem to encompass the facts that would be necessary to establish standing. So this is this is a fairly low bar. It's not predominance of the evidence. It's just do the allegations provide a kind of umbrella for the trial court to dig deeper and consider the evidence and and the facts. So I guess what I'm getting to is that if you feel you have an obligation to determine standing in in this case, I don't think it needs to be a definitive determination. I think it can be based on the general allegations in the complaint and the outcome would be for the district court to dig deeper and and wrestle with the standing issue on a more evidentiary basis. I'm not sure because if you haven't already demonstrated your stance, I think we should dismiss the case. It was your burden. Well, I think we've we've we've met the burden. I mean, we've we've. If you've met the burden, why would we remand to the district court to see if you can meet your burden? Well, you've got to remember that that the district court really addressed only one issue, which is the adequacy of the remedy. And then it found that the case was moved. And so standing was not raised or argued or briefed in the district court. So it it is really an issue for the very first time in this court. And that's why we decided in an abundance of caution that we would submit detailed declarations. And we also thought there was an argument that under Rule 28A of the court's rules, this might be construed as a case for administrative action. And so on that basis, we were required to address standing. And I think we did very fulsome light. And if the court wants to dig deeply into this issue, which I don't think is needed, then I think the evidence is there to demonstrate standing. Tell me, I'm sorry, does the public petition section of the statute, which authorizes the request that the agency got in the first instance, and they responded and got this thing started? Does that say only an association can file a petition? I just can't find the words. Well, in other words, the assumption of these questions is you may lose on standing because you're not really showing an association as we require it. I'm not sure that section of the statute says it has to be an association or representative group. I'd say it may say any person. It does say any person. Well, if you take Allentown MAC and what Justice Scalia said in Allentown MAC, you don't need an association in Allentown MAC. You need someone who wanted to river rights as against those who are wanting to use other uses. And he said that defined the Article III standing question as well as the zone of interest question. So that's the reason I'm not, but I'm not sure about that. My recollection is that statutory provision, which gets this thing started, which is what EPA responded to initially, said any person. So all we need here is a person who has the requisite interest here is within the zone of interest. These people seem like they're clearly, I think someone was using the product, as I recall. Well, if I can offer a few thoughts on that. Let me ask you one other thing if I can, please. On the deadlines, tell me what your view is. Can you hear me all right? Can you hear me okay? No, you can't. Excuse me. Can you all hear me? I can hear you. Yes, he's got hearing. No, I understand. Can you hear me? I think so. Okay. Well, it says in the statute, I'm trying to figure out what you think they're failing is. It says in the statute that the agency shall propose a rule not later than one year after the date on which the final risk evaluation, after the final risk evaluation regarding the chemical substance is published. So they got a year there. You have to have the final risk evaluation, and then you've got a year. And then it says they can publish in the federal register a final rule not later than two years after the date on which the final risk evaluation is published and may extend the deadlines under this paragraph for not more than two years. You're talking about one year as if it's fixed, and there's no confusion here. I'm not sure how you get there. Why do you think, what are you citing that says a final rule has to be set? There are other provisions I could point you to as well. Well, don't support your notion that if they don't act following 4F, you seem to be arguing following their determination under 4F, they've then got to produce a final rule within one year. I don't see it. Where is that? Well, we're not saying that they must issue a final rule. Well, then tell me what you are saying. Yeah, I think we're saying that they need to issue a proposed rule. And the rule that they issue needs to be based on the 2023 risk assessment. And per the terms of the statute, 6A of the statute, it needs to be a rule which eliminates the unreasonable risk. So those are the bounds of the proposal. They have to have notice of proposed rulemaking. Be precise. I'm not sure what you're saying. What are you saying? They have to have done, where did they fail? Because it looks like they were trying to be very responsible. They got thrown off by the Fifth Circuit's opinion. Let me finish, counsel. They got thrown off by the Fifth Circuit's opinion. And so you have to put that in the equation. So they were doing what they were supposed to do. They answered the public petition that was filed by your folks. They answered it in a very responsible way. They said, yes, under 4F, we think there's something here. We've got to get going. Okay, now they got the Fifth Circuit interceding with what they had to say. I'm trying to understand, where are you looking in the statute? You keep saying one year. One year beginning when? And one year beginning on December 1, 2023, when EPA made a formal determination of unreasonable risk. And the statute, section 6. So you're talking about 4F. It doesn't say that. That's not what 4F says. No, but that's what section 6 says. Let me just tell you what my concern is, so you can answer it, all right? 4F says take appropriate action or whatever. It doesn't say issue a final rule. It says take actions under 4, 5, and 6. Those actions can include risk determinations. They can conclude setting questions out to parties who have an interest to get their interest, et cetera. Then, once a risk determination has been made, then the rules click in about when a final rule has to be issued. And I'm not seeing where you're slotting this in. It is not off of 4F. 4F does not give you what you want. All the following language in 4, 5, and 6 talk about risk determination, and they talk about the issuance of rules. 4F does not. Well, your honor, I think there are two aspects of 4F that are important. First, there needs to be an applicable action, and it needs to be an action under section 6. And so, if you look to section 6 to see what options Congress has given the agency. Risk determination. That's the first thing that's very clear. You've got to do a risk determination. Well, but they've done that. Okay, that's what I'm saying. But then the statute sets dates by reference to the risk determination, when that is done, when a rule can be issued, how much of an extension you can have in proposing the rule. I'm trying to figure out, what is your theory? They failed to do what on when? Well, first of all, they did not take an action because information collection is nowhere mentioned in section 6. And you need to look to section 6. Section 6 refers to the APA. The APA in rulemaking procedures surely contemplates- This has nothing to do with the APA. It does. The statute refers to using APA procedures. Well, in a very limited way. I think the statute has a detailed rulemaking provision of its own, which is very prescriptive. And it doesn't say anything about information collection. What it does say is that there is a mandatory duty to propose a rule within a year after a determination of unreasonable risk. So, coming back to 4F, we would say, number one, information collection is not an applicable action under section 6. And number two, we would say it is not an action which prevents or reduces the risk to a sufficient extent, which is the second directive in section 4F. An information request is simply an information request. It doesn't prevent a risk. It doesn't reduce a risk. It certainly doesn't reduce the risk to a sufficient extent. So, we would say on this basis, the information request did not meet the plain language of section 4F. And we would further go on and say that the only, if you look at the rulemaking provisions of the statute, the only applicable action that the statute calls out is proposing a rule. It doesn't say you do information collection and then propose a rule. It says you propose a rule. Got it. Got it. I think we got it. You got it. Okay. All right. Thank you, Your Honor. We'll give you a little bit of time for rebuttal, and we will hear now from Mr. Anderson. It's the Anderson morning in court. No relation. Good morning, Your Honors. May I please report Christopher Anderson for the EPA. I'll get to what I perceive to be the nub of the dispute here, Your Honor. Neither section 4F nor section C1 required the EPA to propose a rule within a year. Section 4F says only the EPA has to initiate applicable action under sections 5, 6, or 7. EPA did that by requesting information that it needs to complete analyses that are required by section 6 for rulemaking. Section C1 doesn't require EPA to issue a rule within a year because section C1 says the EPA must propose a rule within a year of making an unreasonable risk determination under section B4. EPA has not made an unreasonable risk determination under section B4. My friend is correct. That has not been done? That has not been done, Your Honor. In what respect has it not? Because section 6 requires action as soon as practicable, and it creates a string of consecutive deadlines to make sure that EPA regulates harmful chemicals in a timely manner. And what EPA has done so far is a request for comment in the Federal Register. Is EPA, in your view, currently obligated to meet any further deadline in section 6? And if so, which deadlines and when? Currently, we don't think EPA is obligated to meet any of the specific deadlines in section 6. Why? Because those deadlines are triggered by a finding of unreasonable risk, which EPA hasn't yet made under that. EPA has made a finding of unreasonable risk about this very process and byproduct. So bear with me while I split it. Yes, in a different procedure. Right. So let me split it here and bear with me. It is the same standard unreasonable risk. It's the same statutory language. But section 6 requires that finding to be supported by different analyses, and it requires that it be made through different procedures. EPA is currently determining how much additional work it needs to do to translate the finding that it made in the section 5 proceeding into a section 6 unreasonable risk determination. And EPA hasn't made a determination in that regard at this time. But even then, you would be under a deadline, no? Yes. I think if EPA made an unreasonable risk determination. But you have an unreasonable risk determination, and in your telling, you're in a process of gathering information. And isn't there like a three-year window if you had no information at all? I'm looking at B4G. Complete a risk evaluation as soon as practicable, but not later than three years after the date on which you initiated the risk evaluation. So you're saying you haven't even initiated a risk evaluation? So that's an interesting question, Your Honor, that I don't have a firm position on for you today. That is not an adequate response. I'm sorry. As Your Honor observed, let me explain. And I do appreciate your frustration with this. And EPA has some frustration with this. I can imagine. The statute doesn't clearly lay out how EPA proceeds in this unusual factual circumstance, where it's not conducting a section 6 proceeding through the ordinary process that begins with prioritization. Instead, it's starting one from a Section 4F proceeding and from the granting of a Section 21 petition. And it has previously done this Section 5 process. So if EPA had granted the famous petition for a Section 6 proceeding without the previous Section 5 process, I don't think there's any question that EPA would have to commence a brand-new risk evaluation and with the procedures as they're laid out in the statute. In this case, I think EPA would ideally like to be able to do something less than all those procedures that still meet the requirements of Section 6 that relies on the Section 5 process. But the statute doesn't say how EPA can do that. And EPA is undertaking an analysis of how it can translate that Section 5 finding, what additional work it may have to do to reach a Section 6 finding of unreasonable risk. Your foundational argument is you can't be in the rulemaking part of 6 yet because you have not done a required risk evaluation. That's correct, Your Honor. I mean, that's the heart of what your argument is. Yes. Which really immediately rebuts the claims that are being made here. You can't get to the rulemaking part of 6 and all of what it says because that all relies on the assumption that risk evaluation has been done. Correct, Your Honor. And risk evaluation is, as I understand it, as a layperson, is not a small procedure. It is not a small procedure, Your Honor. It has several steps. It typically takes years. I do want to say, and we put this in our brief, the fact that EPA doesn't think it currently has a date certain deadline under Section 6 doesn't mean the EPA is free to take all the time in the world that it wants. That's the thing. I mean, why shouldn't we, for example, and I'm not speaking even for myself, let alone for my colleagues, but just as a hypothetical, send it back to the district court to work with the parties to come up with a deadline for this, as you say, trying to kind of dovetail or translate the information that EPA has with its forward-moving duties under Section 6. The Section 6 risk evaluation is to come up with a determination whether the chemical substance presents an unreasonable risk of injury to health of the environment. EPA has made that very determination. You know that this manufacturing process produces an unreasonable risk of injury to health of the environment. That's a big part of the work, and I understand that there's a few other aspects, but it seems unlikely that the statute would afford you no deadlines. I can't read the statute to say just because of this, as you say, unusual circumstance, you are off the grid altogether. I think the statute doesn't contemplate this specific situation. I think that the statute doesn't set specific deadlines, but I think it would potentially be applicable is in some other suit, not a nondiscretionary duty suit, but in an unreasonable delay suit, certainly a court could look at the statutory deadlines and use those as benchmarks by which to judge whether the agency is being dilatory. So the burden is on members of the public. The burden is not on the agency at this point. I mean, the agency always takes its responsibilities to protect human health and the environment very seriously. The question is, what can a court order the agency to do, and what did Congress say that was the appropriate relief in a citizen suit? Would you at least agree that the agency has forward-moving duties under Section 6? Absolutely. For two reasons. Explain what you mean when you say yes, and then you can give the two reasons. I thought you told me you didn't think it had any particular deadlines. EPA has a duty to conclude the Section 6 proceeding within a reasonable time. It has that duty for two reasons. It has that duty because it granted the plaintiff's Section 21 petition and also because it has opened a docket and said that it is committed to pursuing a rulemaking process. EPA believes it is bound to complete that process within a reasonable time, but you don't need to take EPA's word for it. The Ninth Circuit held that very thing in a case in Ray Community Voice, and let me get the citation for you. Not under TSCA. Yes, under TSCA. That was 878 F3rd 779. That's the Ninth Circuit. And EPA does not contest that it now has a duty to complete the proceeding and to complete it within a reasonable time. And so that's just a reasonable time? It's just a reasonable time, yes. How much can be carried over from what you did that turns out to be only a minimal use that was tangled up with the Fifth Circuit? So I think anything that's scientific can be carried over. All of the science that EPA did in the risk evaluation, Section 6 requires EPA to consider a broader range of scenarios. There might be some additional science that needs to be done. EPA's regulations ordinarily require a Section 6 risk evaluation to go through peer review, which the Section 5 risk assessment did not. So perhaps EPA will determine that it needs to do that. Those are the types of issues that EPA is working out and has not yet made a determination on. Tell me what else and where to look in the statute when you say it's different, because Mr. Sussman was saying that, you know, the risk evaluation is just unreasonable risk, don't consider cost or other non-risk factors, and examine exposed or susceptible subpopulations. Period. End of story. So a Section 5 risk assessment is specifically for the new use for which the new use notice is made. Isn't this rulemaking, though, about this process, which is the thing that produces the PFAS, and this is the only U.S. participant in engaging in that process? So I'm just saying the rule is not really substantially broader than the new use. You're going to be angry with me, Your Honor, but I have to be honest. EPA has not made that determination yet. And that's because ordinarily EPA would not undertake a Section 6 rulemaking per a specific condition of use. And so in this case, EPA, and EPA currently has a rulemaking out right now about the range of scenarios that need to be taken into account in a Section 6 risk evaluation. That's a proposed rule, not a final rule. Are you going to wait until that's completed to proceed here? I have not asked EPA that question, but I don't think so. EPA is proceeding with this process. So when you talk about that, I mean, I'm looking, for example, at the risk evaluation subsection B here under Section 6. Are there provisions I should be looking at to inform what you think you have to do under Section 6 that you did not have to do under Section 5 that can just help us get a grip on what the task is that you believe that the EPA is engaged in? Yeah. So Section 6 speaks in terms of needing to evaluate the conditions multiple of use of the substance. And so that's the issue that I was just speaking about, whether it needs to be broader. But I would also point, Your Honor, to EPA's regulations at 40 CFR Part 702 subpart B. Those are the regulations. Say it again. I'm sure it's in govern risk evaluations under Section 6. EPA is bound by those regulations. They provide a number of detailed steps that the agency has to undertake when preparing it. And the other two things that I would point out is those regulations ordinarily require a Section 6 risk evaluation to undergo peer review. And TSCA itself, Section 6, requires that a Section 6 risk evaluation be published for public comment, which hasn't happened in this case. Right. And I think that's why there's a year that gives you to do the rule after the... After EPA makes the finding, which I think happens after the risk evaluation has gone for public comment. And then EPA... There's a 4F finding that's been made. But the 4F... And then there's the Section 6 finding. Right. 4F is just you're agreeing that there may be a risk here. That's all. That's correct. We just agree that there may be information. That's not about rulemaking. You haven't gotten there yet. And just so that I'm perfectly clear, and I don't think it matters for this, we agree that the plaintiffs have alleged that there may be information. So on this procedural posture, we don't contest that point. But we haven't actually made that finding. You're talking about the Section 6B4A finding? The Section 4F, I think. 4F. Doesn't your letter pretty much say... I think probably... I just want to make sure that I'm clear and not saying that EPA has said things that they haven't. What EPA did when it granted the Section 21 petition, I think, is essentially fine to the same thing. But it is... It was like, at least to me, it was like you were looking at 4F and, okay, there's a petition. Okay, they're right. We should do something. Yes, that's correct. And it was made with respect to this process as the predicate to the new use petition, the new use order. So EPA didn't need to make a 4F finding to initiate the Section 5 process? And the Fifth Circuit, in that letter, there's a footnote excluding saying this isn't... You're not dealing with the Fifth Circuit problem. Correct. I appreciate that this is all very complicated, and TSCA is... The overlapping nature of TSCA makes this more complicated. But I think getting back to what this suit is about, a nondiscretionary duty suit under Section 4F, EPA has initiated a proceeding under Section 6. EPA believes it is obligated legally to conclude that proceeding within a reasonable time, and we think that the district court could award no more relief. And for that reason, we think the district court was correct in holding that the case is moved. All right. Why can't the district court consider with the parties if we remanded it? It would be within the realm of reasonableness, given that your inquiry under risk determination under 5 and 6 are different. So I think under this court's precedence here, Club v. Thomas, anything that involves EPA's discretion needs to happen in an unreasonable delay suit, which is brought in this court in the first instance and not the district court. Okay. Thank you, Your Honors. We would ask that the district court be affirmed. All right. Thank you. Now we'll hear from Ms. Ellsworth. Good morning, Your Honors. Jessica Ellsworth on behalf of the intervener, Enhanced Technologies. The district court was correct here that count one of this complaint is moot, and count two is outside the limited waiver of sovereign immunity in the citizen suit petition. It could also have held the plaintiff's lack standing. Each of these are reasons to affirm. I think there is two misunderstandings I want to clear up from some of the discussion that's been happening so far. And the first is that the Section 5 finding that underlay the Section 5 orders has been vacated. So when Your Honors are asking questions about can't they just transfer it over, that has been vacated. So there is work that would need to be done in that. Second, and relatedly, the Section 6 risk assessment process is very different from what happened under Section 5. And you can see this spelled out in Section 6B, which is conveniently not included in the appellant's addendum, but is in the government. It sets out the process. And among other things, the process differs because it requires first a draft of the risk evaluation, then an opportunity for notice and comment, and then a final publication. And that means that if there are errors that are made, among other things, it gives a company like Enhanced an opportunity to weigh in on the draft risk assessment and correct some of those or provide information as to the agency before it finalizes it. As the government counsel pointed out, 40 CFR Part 702 sets out very specific and detailed requirements for a Section 6 risk assessment. And one of the things I think is important to keep in mind is that Section 5, we're supposed to be talking about something that is a new use, a new chemical. There is a different analysis when what you have is an existing use. And here, the fluorination process has been used back to the early 1980s. So you're talking about a different set of factors that go into it. And before you can get to the proposed rule, which is even farther down the line, there are an additional set of factors that come in related to alternatives, related to cost-benefit analysis, related to impact on the national economy, related to all of the positives that come from fluorinating containers. The reason fluorination is used is to keep the toxic material in those containers inside it. There are actually a lot of reasons under the Clean Air Act and other reasons that it's very good to use fluorination to improve the barrier properties of the product. So all of these, I think, flow in favor of the fact that under 4F, the agency did everything it was supposed to do when it said, we're going to start looking at this. It now has a period of time to follow the rules set out in Section 6B, 6A, 6B, 6C, before it could get any further along. So for all of those reasons, we think the district court was exactly right to count one is moot. I'm happy to address standing or any other questions that your honors have on the Section 4F, Section 6, Section 7 questions. Nope. If there are no other questions, then we also ask that you affirm the decision below. Thank you. So I want to come back to a very fundamental point here, which is that EPA has been very clear that there are multiple paths that lead to a Section 6 rulemaking. It's also been very clear that Section 6 can be tricky by a finding of unreasonable risk, even if the agency has not conducted a risk evaluation under Section 6B, which complies with all of the plethora of requirements that government counsel and enhanced counsel are describing. So... What's your authority for that? Excuse me? You say that their obligation for a rulemaking under Section 6 can be triggered by a finding of unreasonable risk that doesn't meet the 6B criteria.  I just was asking you, where are you finding? Well, we cite that in our reply brief, and it's a decision that EPA made actually on a Section 21 petition in 2023. And they were very explicit there that even though a risk evaluation had not been conducted, the evidence amounted to a demonstration of unreasonable risk and therefore enabled EPA and authorized EPA and directed EPA to go right to rulemaking without backing up and conducting the full risk evaluation. And there's a court decision in the Northern District of California, which we also cite, which says basically the same thing, although the facts are slightly different. And what it says is that granting a petition for rulemaking under Section 21 leads directly into the Section 6 rulemaking process. It does not require that the agency go back and conduct a risk evaluation under Section 6B. So I've been focusing on Section 6C, but I also want to direct you to Section 6A, which in a way is the heart of the rulemaking process under Section 6. And Section 6A basically says the same thing. It says that if EPA has determined an unreasonable risk in accordance with Section B4A, then the agency shall conduct rulemaking to address the risk. And it goes on and says that the rulemaking must eliminate the unreasonable risk which has been found. All right. Thank you very much. Thank you very much. The case is submitted.
judges: Pillard; Walker; Edwards